[Cite as *State v. Shook*, 2014-Ohio-3987.]


IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
LOGAN COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO.  8-14-01

    v.

JOHN TIMOTHY SHOOK,              O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Logan County Common Pleas Court
Trial Court No. CR13-03-0057

Judgment Affirmed

Date of Decision:   September 15, 2014


APPEARANCES:

    *Andrew T. Sanderson* for Appellant

    *Eric C. Stewart*  for Appellee

**SHAW, J.**

{¶1} Defendant-appellant John Timothy Shook ("Shook") appeals the December 11, 2013 judgment of the Logan County Common Pleas Court sentencing Shook to an aggregate prison term of 7.5 years after Shook was convicted in a jury trial of six counts of Sexual Battery in violation of R.C. 2907.03(A)(7), all felonies of the third degree, five counts of Gross Sexual imposition in violation of R.C. 2907.05(A)(1), all felonies of the fourth degree, and one count of Attempted Sexual Battery in violation of R.C. 2923.02 and R.C. 2907.05(A)(7), a felony of the fourth degree.

{¶2} The facts relevant to this appeal are as follows. On March 12, 2013, Shook was indicted for various sexual crimes alleging that Shook, who was the band and choir teacher at Riverside school in Logan County, engaged in sexual contact with three of his high school students. (Doc. 2). During the proceedings the indictment was amended twice. (Doc. 18); (Doc. 52). Shook was ultimately charged with thirteen total counts allegedly perpetrated against three separate victims: six counts of Sexual Battery against victim E.P. in violation of R.C. 2907.03(A)(7), all felonies of the third degree, three counts of Gross Sexual Imposition of victim L.K. in violation of R.C. 2907.05(A)(1), all felonies of the fourth degree, Attempted Sexual Battery against victim L.K. in violation of R.C. 2923.02 and R.C. 2907.03(A)(7), a felony of the fourth degree, two counts of

Gross Sexual Imposition against victim K.W. in violation of R.C. 2907.05(A)(1), both felonies of the fourth degree, and one count of Attempted Sexual Battery against victim K.W. in violation of R.C. 2923.02 and R.C. 2907.03(A)(7), a felony of the fourth degree. (Doc. 52). Shook pled not guilty to the charges against him.

{¶3} On July 18, 2013, Shook filed a motion in limine to exclude "prior bad acts" evidence. (Doc. 36). In the memorandum in support, Shook argued that he anticipated the State would offer the testimony of students he previously taught at another school and that those students would testify that Shook engaged in sexual acts with them. (*Id*.) Shook argued that such evidence would be unfairly prejudicial and was impermissible under Evid.R. 404(B).

{¶4} On July 29, 2013, the State filed a response to Shook's motion in limine, contending that under the Ohio Supreme Court's decision in *State v. Williams*, 134 Ohio St.3d 521 (2012), 404(B) evidence could be introduced in sexual abuse cases where it is relevant and probative if used to prove the defendant's plan, motive, intent, or preparation. The State argued that the testimony of the students from Shook's previous school would be offered for just such a purpose. (Doc. 39).

{¶5} On September 19, 2013, the trial court filed a journal entry denying Shook's motion in limine, citing *Williams*, and this Court's decision in *State v. Bump*, 3d Dist. Logan No. 8-12-04, 2013-Ohio-1006. (Doc. 50). The trial court

indicated that it would specifically instruct the jury that it could not consider the testimony of Shook's prior students to show that Shook acted in conformity with these prior acts. (*Id.*)

{¶6} On October 14, 2013, Shook filed a "Motion to Sever the Indictment." (Doc. 90). Shook contended that although the charges were all similar in character as sex offenses, the charges related to victims L.K. and K.W. required the state to prove that Shook acted "with the purpose of sexual gratification," making the charges substantially different from the Sexual Battery charges related to victim E.P. (*Id.*) On October 22, 2013, the State filed a response, contending that the law favored joinder, and that the evidence related to each victim was simple and direct. (Doc. 123).

{¶7} On October 24, 2013, the trial court filed a journal entry denying Shook's motion to sever the indictment. (Doc. 133). The trial court reasoned that first, the testimony of the victims would be admissible in the other victims' trials, and second that the evidence was simple and direct such that the jurors should not be confused. (*Id.*)

{¶8} The case subsequently proceeded to a jury trial, which was held from October 29 to November 1, 2013. At trial the State called 14 witnesses including the three victims. The first victim, E.P., testified that she was a student in Shook's band and choir classes, that she was a member of Shook's marching band, that she

was a "band aide" for Shook her freshman year of high school, that she occasionally babysat Shook's children, and that she kept the book for Shook's junior high basketball team. (Tr. at 186-194). E.P. testified that Shook first showed an interest in her in his office, where he called her over and told her to sit on his lap and read an email. (Tr. at 195-197). E.P. testified while she was on Shook's lap, Shook began touching her legs and vagina. (Tr. at 197-198). E.P. testified that she was 16 at the time, and that Shook told her she could not tell anyone about the incident. (Tr. at 201).

{¶9} E.P. then testified to a series of incidents where she engaged in sexual acts with Shook, including losing her virginity to Shook, other incidents of vaginal sex, oral sex to both parties, and anal sex that occurred from December of 2011 through January of 2013.[1] E.P. testified to incidents that occurred in various locations around Riverside school, and at Shook's home. E.P. was able to specifically identify dates and locations through dated entries in her journals, which were introduced into evidence at the trial.

{¶10} The second victim to testify at trial, L.K., testified that she had wanted to learn clarinet to join marching band so Shook began giving her lessons in his office at the school in the summer of 2012. (Tr. at 350). L.K. testified that after her second lesson with Shook he called her over to the computer, put his arm

---

[1] As Shook does not contest the sufficiency or weight of the evidence for any of his convictions, we find it unnecessary to recite the details of each separate instance of sexual activity.

around her and then "touched [her] butt." (Tr. at 353). L.K. testified that she was told not to tell anyone, and that she did not tell her parents or other adults because everyone "loved" Shook. (Tr. at 355). L.K. testified that during the next lesson Shook touched her butt and her breasts. (Tr. at 354). She testified that she tried to pull away but she could not because Shook was "stronger." (*Id.*) L. K. testified that the same thing happened again at the next lesson, with Shook touching her butt and her breasts. (Tr. at 355). L.K. testified the lesson after that she was wearing spandex because she had volleyball practice. L.K. testified that Shook put his hand down her spandex and touched her "bare vagina." (Tr. at 357). L.K. testified that shortly after that final incident she stopped going to private lessons with Shook and quit marching band. (Tr. at 358).

{¶11} The third victim to testify at trial, K.W., testified that she was also a member of the band and in Shook's choir class. K.W. testified that Shook gave her a ride home from the school on multiple occasions. K.W. testified that on one of the rides home, Shook touched her leg and she was uncomfortable and scooted away. (Tr. at 388). K.W. testified that on another ride Shook touched her leg again but up higher. (Tr. at 389). K.W. also testified to an incident that happened in Shook's office where Shook spanked her with his bare hand, grabbed her "boob" and "squeezed her nipple." (Tr. at 394). K.W. testified that Shook told her not to tell anyone because he would get fired if she did. (Tr. at 395).

{¶12} After the State rested its case, Shook called ten witnesses and also took the stand himself to deny that he ever had sex with E.P. and to deny that he touched L.K. or K.W. inappropriately.

{¶13} Following closing arguments and jury instructions,[2] the case was submitted to the jury. The jury returned guilty verdicts on twelve of the thirteen indicted counts, acquitting Shook of the Attempted Sexual Battery of K.W. He was otherwise found guilty of six counts of Sexual Battery against E.P. in violation of R.C. 2907.03(A)(7), all felonies of the third degree, three counts of Gross Sexual Imposition of victim L.K. in violation of R.C. 2907.05(A)(1), all felonies of the fourth degree, Attempted Sexual Battery against L.K. in violation of R.C. 2923.02 and R.C. 2907.03(A)(7), a felony of the fourth degree, and two counts of Gross Sexual Imposition against K.W. in violation of R.C. 2907.05(A)(1), both felonies of the fourth degree.

{¶14} On December 9, 2013 a sentencing hearing was held. At the hearing Shook had several people speak on his behalf pleading for leniency, and he made a statement himself. The prosecutor then made a statement and argued for maximum consecutive sentences for a 39 year prison term. Members of the victims' families also made statements. After hearing the arguments of the parties

---

[2] At the request of the defense, the jury was also instructed as to the lesser included offenses of Sexual Imposition on the Gross Sexual Imposition charges.

the court sentenced Shook to serve an aggregate prison term of 7.5 years.[3]    A

judgment entry memorializing this sentence was filed December 11, 2013.  (Doc.

163).

{¶15} It is from this judgment that Shook appeals, asserting the following

assignments of error for our review.

> **ASSIGNMENT OF ERROR 1**
> **THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE REQUEST OF THE DEFENDANT-APPELLANT TO SEVER THE COUNTS OF THE INDICTMENT BELOW.**
>
> **ASSIGNMENT OF ERROR 2**
> **THE TRIAL COURT COMMITTED HARMFUL ERROR IN ADMITTING CERTAIN EVIDENCE OF "PRIOR BAD ACTS" IN THE TRIAL OF THE INSTANT CASE.**
>
> **ASSIGNMENT OF ERROR 3**
> **THE TRIAL COURT COMMITTED HARMFUL ERROR IN PRECLUDING THE DEFENDANT-APPELLANT FROM INTRODUCING EXCULPATORY EVIDENCE IN THE TRIAL OF THE INSTANT CASE.**

*First Assignment of Error*

{¶16} In Shook's first assignment of error, he argues that the trial court

erred by overruling his motion to sever the indictment.  Specifically, Shook

contends that the crimes against the various victims vary temporally, and that the

---

[3] Shook was ordered to serve 5 years in prison on each of the Sexual Battery convictions against E.P., which would run concurrent to each other.  Shook was ordered to serve 15 months in prison on each of the four convictions related to L.K., which would run concurrent to each other but consecutive to the five year Sexual Battery term.  Shook was ordered to serve 15 months in prison for the Gross Sexual Imposition convictions against K.W., which would run concurrent to each other but consecutive to the other prison sentences, creating the aggregate prison term of 7.5 years.

crimes against victims L.K. and K.W. were dissimilar to those against victim E.P. because the State had to prove the extra element of "with purpose of sexual gratification" for L.K. and K.W.[4]

{¶17} The joinder of offenses is governed by Crim.R. 8(A) which provides:

**Two or more offenses may be charged in the same indictment * * * if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.**

{¶18} " 'It is well-established that the law favors joinder because the avoidance of multiple trials conserves time and expense and minimizes the potentially incongruous outcomes that can result from successive trials before different juries.' " *State v. Howard,* 2d Dist. Greene No.2012–CA–39, 2013–Ohio–2343, ¶ 35, quoting *State v. Glass,* 2d Dist. Greene No.2000–CA–74, 2001 WL 228453, *2 (Mar. 9, 2001), citing *State v. Schiebel,* 55 Ohio St.3d 71, 86–87 (1990).

{¶19} A defendant can move to sever joined offenses pursuant to Crim.R.14, which states that, "If it appears that a defendant * * * is prejudiced by a joinder of offenses * * * the court shall order an election or separate trial of

---

[4] Shook states in his argument that "with purpose of sexual gratification" is an element of Gross Sexual Imposition. It is actually part of the definition of sexual contact, which is an element of Gross Sexual Imposition. Pursuant to R.C. 2907.01(B), " 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, *for the purpose of sexually arousing or gratifying either person*." (Emphasis added.)

counts, grant a severance of defendants or provide such other relief as justice requires."

**{¶20}** "The defendant claiming error in the trial court's refusal to sever multiple charges has the burden of affirmatively showing that his rights were prejudiced." (Citations omitted.) *State v. Skatzes,* 2d Dist. Montgomery No. 15848, 2003–Ohio–516, ¶ 147. "To affirmatively show that his rights have been prejudiced, the defendant 'must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and [the defendant] must demonstrate that the court abused its discretion in refusing to separate the charges for trial.' " *Glass, supra,* at *3–4, quoting *State v. Lott,* 51 Ohio St.3d 160, 163 (1990). (Other citation omitted.)

**{¶21}** "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Schaim,* 65 Ohio St.3d 51, 59 (1992); *State v. Thomas,* 3d Dist. Allen No. 1–11–25, 2012–Ohio–5577, ¶ 21. If the evidence of other crimes would be admissible at separate trials, any " 'prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." *Schaim*, quoting *Drew v. United States,* 331 F.2d

85, 90 (1964). Moreover, "a defendant is not prejudiced by joinder where the joined offenses are 'simple and direct, so that a jury is capable of segregating the proof required for each offense.' " *State v. Wilson,* 2d Dist. Montgomery No. 20910, 2005–Ohio–6666, ¶ 38, quoting *State v. Fletcher,* 2d Dist. Clark No.2003–CA–62, 2004–Ohio–4517, ¶ 41.

**{¶22}** We review a trial court's decision on joinder of offenses for trial under an abuse of discretion standard. *State v. Stober*, 3d Dist. Putnam No. 12-13-09, 2014-Ohio-1568, ¶ 99. "The term 'abuse of discretion' connotes more than a mere error in law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable." *State v. Adams,* 62 Ohio St.2d 151, 157 (1980).

**{¶23}** In this case, prior to the trial, Shook filed a motion to sever the indictment, which was denied by the trial court. The trial court reasoned that the testimony of the victims would be admissible in each other's trials and that the testimony was simple and direct such that it should not confuse the jury. The trial court thus found that both of the factors that the Ohio Supreme Court stated in *Schaim* were present in this case, supporting joinder, even though the trial court only needed to find one factor or the other. Shook renewed his motion to sever the indictment at the beginning of the trial and it was again denied by the trial court, for the same reasons it had stated previously.

{¶24} Despite Shook's arguments that the charges were dissimilar and varied temporally, the evidence presented at trial suggests that many of the charges were similar and that they occurred during the same time frame. Shook was charged with Sexual Battery of E.P. and Attempted Sexual Battery of both L.K. and K.W., indicating a direct similarity between charged offenses against all three victims. The remaining charges were all Gross Sexual Impositions, which were also sexually-related crimes.

{¶25} Shook's claim that the crimes varied temporally is not necessarily supported by the record either. The testimony at trial indicated that all of the sexual crimes took place between December of 2011 and January of 2013. The Sexual Batteries against E.P. allegedly took place over that entire span, while the crimes against L.K. and K.W. both allegedly took place in the summer of 2012, specifically July and August. Thus all of the crimes were of a similar nature and were within the same time frame.

{¶26} The crimes were also similar in that they were all perpetrated against similarly aged victims who were all students in Shook's classes. In addition, all three victims testified to incidents that took place at the school, specifically in Shook's band room or his office. Thus Shook's arguments that the crimes were dissimilar have no merit.

**{¶27}** We addressed a similar argument to Shook's in *State v. Stober*, 3d Dist. Putnam No. 12-13-09, 2014-Ohio-1568, and found that the testimony of multiple victims of a teacher who was having sexual contact with students could have been admissible in each other's trials under Evid.R. 404(B) "to show motive, intent, plan, or scheme." *Stober* at ¶ 102. On this basis, we found that the trial court did not abuse its discretion in denying the defendant's motion to sever. A similar holding is appropriate here where under 404(B) the State could have introduced the testimony in each separate trial to show a plan or scheme.[5]

**{¶28}** Nevertheless, while the trial court needed only to find that either the testimony would be admissible in separate trials *or* that the testimony was simple and direct, the trial court found both in this case. The result of the trial seems to suggest that the testimony was simple and direct as the jury acquitted Shook on one of the counts against victim K.W., indicating that the jury was able to clearly follow and understand the testimony. There is no indication in the record that the testimony was anything but simple and direct and Shook has not pointed us to anything to establish otherwise.

**{¶29}** Accordingly as it is Shook's burden on appeal to establish affirmatively that the trial court erred in denying his motion to sever the

---

[5] In addition, we would note that Shook's argument that there was an additional element to be proven in the case of L.K. and K.W. similarly fails, as while "for the purpose of sexual gratification" is not explicitly stated in the Sexual Battery statute, having intercourse with a student carries an obvious implication of sexual gratification.

-13-

indictment, that he was prejudiced by the denial of his motion and he has not done so, we cannot find the trial court abused its discretion. Therefore his first assignment of error is overruled.

*Second Assignment of Error*

{¶30} In his second assignment of error, Shook argues that the trial court erred in permitting the State to present the testimony of three witnesses from Covington, a school Shook taught at previously. Specifically Shook contends that the testimony of these witnesses constituted prior "bad acts" testimony and was impermissible under 404(B), that the students' testimony was irrelevant, and that it was far more prejudicial than probative.

{¶31} Evid.R. 404(B) reads as follows.

**Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * ***

{¶32} "Generally, the prosecution in a criminal case may not present evidence that the defendant has committed other crimes or acts independent of the crime for which the defendant is being tried to establish that the defendant acted in conformity with his bad character." *State v. Thomas,* 1st Dist. Hamilton No. C120561, 2013–Ohio–5386, ¶ 20, citing Evid.R. 404(B); *State v. Brown,* 1st Dist. Hamilton No. C–120327, 2013–Ohio–2720, ¶ 26. However, Evid.R. 404(B)

provides that other bad acts are admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Shedrick,* 61 Ohio St.3d 331, 337 (1991); *Brown* at ¶ 26. This list is nonexclusive. *State v. Morris,* 132 Ohio St.3d 337, 2012–Ohio–2407, ¶ 18.

**{¶33}** The Ohio Supreme Court held in *State v. Williams,* 134 Ohio St.3d 521, 526, 2012–Ohio–5695, that the admission of other acts evidence is a three-step process. *Williams,* at ¶ 22; *State v. Guerra,* 9th Dist. Lorain No. 12CA010188, 2013–Ohio–5367, ¶ 17.

> **The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.**

*Williams* at ¶ 20.

**{¶34}** "Evidentiary rulings at trial are reviewed on appeal for an abuse of discretion." *State v. Altman,* 7th Dist. Columbiana No. 12 CO 42, 2013–Ohio-5883, ¶ 22, citing *State v. Beshara,* 7th Dist. Mahoning No. 07 MA 37, 2009–Ohio–6529, ¶ 55, citing *State v. Bey,* 85 Ohio St.3d 487, 490 (1999).

{¶35} In this case Shook specifically objects to the testimony of J.H., T.C., and C.B. who were all students at Covington while Shook taught there from 2001 to 2005. At trial J.H. testified that when he heard of Shook's indictment he called the authorities to report an incident he witnessed in the band room at Covington where Shook was kissing one of J.H.'s fellow students, T.C. (Tr. at 435). T.C. testified that the kiss did take place, that it was mostly mutual, and that she later had sex with Shook at his house one time. (Tr. at 449).

{¶36} C.B. testified that when she was 17 and a student of Shook's at Covington she also had sex with Shook once during school. (Tr. at 460). C.B. and T.C. both testified that Shook flirted with his students. (Tr. at 448, 461). All three of these students were members of Shook's band at Covington.

{¶37} On appeal Shook argues that the Covington witnesses' testimony was not material, and that even if it was, the probative value was substantially outweighed by unfair prejudice.[6] The State contends that the testimony of these Covington witnesses was permissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" and thus was admissible at the trial. The State argues that the testimony was specifically offered to show that Shook had a pattern of preying on teenage female students

---

[6] Shook also argues that the Rape Shield statute should protect him from testimony regarding specific sexual acts, citing to R.C. 2907.02(D). We would note that Shook was not on trial for rape, and there is no similar "Rape Shield" provision in the Sexual Battery statute. There is one, however, in the GSI statute. Nevertheless, there is a specific exception in that provision for the type of 404(B) evidence discussed here.

from the age of 15-17 in his band and choir classes, and that he would then engage in sexual activity with them either on school grounds or at his home. The State also contends that the Covington witnesses' testimony was particularly relevant to the claims of victim L.K. and K.W. where the State had to prove that when Shook had contact with them, Shook had a sexual interest in those victims.

{¶38} The record supports the State's arguments as Shook's victims were all 15-17 year old females who were in his band class and the sexual activity took place either in the school or at Shook's home. Both of the female Covington witnesses testified to incidents that happened in the school, which is similar in nature to all three of the victims in this case, indicating a plan or pattern.

{¶39} Moreover, the Covington witnesses' testimony tends to show a sexual motive in Shook touching L.K. and K.W., which is relevant to the elements of the Gross Sexual Imposition charges. Shook either denied that he touched these victims inappropriately, or claimed that any contact was not of a sexual nature. The testimony of the Covington witnesses tends to dispute his denials and indicates that Shook had a sexual interest in girls of that age in his classes.

{¶40} While there is some inherent prejudice in allowing the testimony of the Covington witnesses, we cannot find under the facts and circumstances of this case that the trial court abused its discretion in finding that the Covington witnesses' testimony was admissible at trial.

{¶41} Nevertheless, even if the testimony of the Covington witnesses was improperly admitted, any resulting prejudice was severely diminished by the trial court's multiple limiting instructions, and by being, at least in some part, cumulative to other testimony already in the record.

{¶42} Prior to any of the Covington witnesses taking the stand, the court gave the following limiting instruction to the jury.

> **Ladies and gentlemen, the State, as they have told you in opening statement, is going to have witnesses from the prior school district that the defendant was employed at. This is what we call other acts evidence, and there are rules under which this is admissible. We do not in this court or any other court in the State convict somebody of bad character, so his – his character isn't at issue here, and this testimony isn't being admitted to show the defendant's character or that he acted in conformity with that character; it's being admitted to prove other elements of the offense such as purpose, motive, plan, or scheme.**

(Tr. at 413).

{¶43} At the conclusion of the trial, Shook's counsel further highlighted the court's preliminary instruction to the jury during his closing arguments, by emphasizing that the jury could not consider the Covington witnesses' testimony as 404(B) evidence.

> **I would like to talk for a moment before I start to talk about the actual alleged victims in this case, about the evidence that you heard from the witnesses who testified from Covington.**
>
> **As [the prosecutor] indicated, they were not victims in this case. There are no charges filed in that case, and the judge will give you a limited instruction telling you you can only consider their**

-18-

**testimony for the purpose of determining motive, opportunity, intent, or purpose, preparation or plan to commit the offense. What you cannot consider it for is that Mr. Shook acted in conformity therewith.**

**He told you when he talked to you about this before; that the reason for that is that we do not consider that because somebody did something bad in the past [does not mean] they did something bad at this point. You're not permitted to consider it for that purpose, and there's a very good reason.**

**Think about the witnesses from Covington. Charges happened eight years ago. What opportunity, what real opportunity does Mr. Shook have to provide you a defense to those charges? Counts that he's not even charged with? Eight years ago, witnesses are gone, memories are faded. There might be alibi witnesses, there might have been someone else who was there.**

**These people did not come forward. They did not give him the opportunity to contest those charges, and it's improper for you to consider that he did that then and because of that he's done what he did to these girls. You may not make that connection.**

**You may consider it for motive, opportunity, intent, or purpose, and when you look at it that way, is what he allegedly did with the Covington witnesses the same as what he did in this case?**

(Tr. at 729-730). Defense counsel then continued to argue that that the incidents at Covington were different than the incidents in this case.[7]

**{¶44}** After closing arguments concluded, the trial court gave its formal instructions to the jury, and specifically instructed the jury again on this issue of the Covington witnesses, using the following language.

---

[7] In defense counsel's lengthy closing argument, she routinely attacks the idea that a consistent "plan," "motive," or "scheme" etc. was shown through the use of the Covington witnesses. (Tr. at 730-31, 762, 779).

> **Evidence was received about the commission of crimes or wrong acts other than the offense with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity with that character. If you find that the evidence of other crimes or wrongs – or wrong act true and the defendant committed it or them, you may consider that evidence only for the purpose of deciding whether it proves the defendant's motive, opportunity, intent or purpose, preparation, or plan to commit the offense charged in this trial. That evidence cannot be considered for any other purpose.**

(Tr. at 803-804).

**{¶45}** The trial court thus gave a limiting instruction *before* the evidence was even heard, and an instruction to the jury before they deliberated. As we presume that the jury followed the court's instructions, we find any potential prejudice severely limited in this case.

**{¶46}** That any potential prejudice is severely limited is also particularly true in light of the fact that the jury was already aware of the existence of at least one Covington witness through the testimony of victim E.P. During direct examination of E.P., the following exchange occurred.

> **Q: Did [Shook] ever talk about why he left his former job?**
>
> **A: He had said that he was having sexual relations with a girl from Covington and she had told her friends and then the teachers heard about it and started asking questions so he just left.**
>
> **Q: Okay. Do you remember where that conversation occurred?**

**A: We were in the instrument room.**

(Tr. at 214). Therefore the jury was at least in part already aware of accusations of Shook having a sexual relationship with a former student at Covington.

{¶47} Thus based on the record before us, we cannot find that the trial court abused its discretion in permitting the Covington witnesses' testimony. However, even if the testimony was improperly admitted, we find that any prejudice was severely limited. Any resulting prejudice seems insignificant in light of the substantial evidence presented at trial, particularly with regard to E.P., who even had journals detailing some of her encounters with Shook. Accordingly, for all of the foregoing reasons, Shook's second assignment of error is overruled.

*Third Assignment of Error*

{¶48} In Shook's third assignment of error, he argues that the trial court erred by excluding the testimony of one of his witnesses. Specifically, Shook contends that the trial court erred in excluding the testimony of J.M., who would have testified that victim E.P. told J.M. she was still a virgin after the date on which E.P. claimed at trial to have had sex with Shook.

{¶49} A trial court has broad discretion whether to admit or exclude evidence and its decision in such matters will not be disturbed on appeal absent an abuse of discretion. *State v. Graham*, 58 Ohio St.2d 350, 352 (1979).

{¶50} Evid.R. 613(B) governs the admissibility of extrinsic evidence of a prior inconsistent statement. It states, in relevant part:

> **Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:**
>
> **(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;**
>
> **(2) The subject matter of the statement is one of the following:**
>
> **(a) A fact that is of consequence to the determination of the action other than the credibility of a witness * * *.**

Evid.R. 613(B).

{¶51} Extrinsic evidence is not admissible under Evid.R. 613(B) unless a proper foundation is laid for its admission. A foundation must be established through direct or cross-examination in which: (1) the witness is presented with the former statement; (2) the witness is asked whether he or she made the statement; (3) the witness is given an opportunity to admit, deny, or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness regarding the inconsistent statement. *State v. Morgan,* 8th Dist. Cuyahoga No. 97934, 2012–Ohio–4937, ¶ 14–15, citing *State v. Theuring,* 46 Ohio App.3d 152, 155 (1st Dist.1988).

**{¶52}** If a witness denies making the statement, extrinsic evidence of the statement is generally admissible; provided, the evidence does not relate to a collateral matter. *State v. Soke,* 105 Ohio App.3d 226, 239 (8th Dist.1995), citing *State v. Riggins*, 35 Ohio App.3d 1, 3 (8th Dist.1986). "If, however, the witness admits making the prior statement, the trial court does not abuse its discretion by thereafter refusing to admit extrinsic evidence of that statement." *State v. Kemp*, 8th Dist. Cuyahoga No. 97913, 2013-Ohio-167, ¶ 36 (additional citations omitted).

**{¶53}** In this case, Shook's attorney attempted to challenge E.P.'s claims regarding having sex with Shook, and E.P.'s related journal entries about when the sexual incidents took place. During Shook's counsel's cross-examination of E.P., the following testimony was presented.

> **Q [DEFENSE COUNSEL]: So you went to snowball February 4th with Austin, and you talked with [J.M.] about that the following Monday, didn't you?**
>
> **\* \* \***
>
> **A [E.P.]: Yes.**
>
> **Q: In fact, you told her that you had a plan with Austin to lose your virginity that night but it didn't happen because the condom broke. Do you remember telling [J.M.] that?**
>
> **A: Not my virginity, his virginity.**
>
> **Q: That's not what you told [J.M.]. Your plan was to lose your virginity?**
>
> **A: She thought that I was still a virgin.**

**Q: Excuse me?**

**A: She thought that I was still a virgin.**

**Q: So you were lying to her when you said that?**

**A: Yes, I was.**

(Tr. at 256-257).

**{¶54}** In order to further attempt to challenge E.P.'s claims and her credibility, Shook called J.M. to the stand in his case-in-chief. When Shook's counsel began to ask J.M. about what E.P. had told her regarding the dance and losing her virginity to Austin, the State objected and the following conversation was held.

**[STATE]: Objection. This is hearsay.**

**MS. BURKETT [Defense Counsel]: I can direct it specifically to impeaching [E.P.]'s testimony yesterday[.]**

**THE COURT: Let's have a side bar, counsel.**

**\* \* \***

**[During sidebar]**

**THE COURT: It's still hearsay.**

**MS. BURKETT [Defense Counsel]: [E.P.] testified yesterday that she did not tell [J.M.] that she was going to lose her virginity.**

**THE COURT: What she is testifying is hearsay. What is the hearsay exception?**

-24-

**MS. BURKETT:** It's one prior inconsistent statement, Your Honor.

\* \* \*

**THE COURT:** I'm not going to allow it. I don't think this is admissible under 613.

**MS. BURKETT: And we need to proffer it because it's a pretty important piece of our case.**

**THE COURT: Okay.**

\* \* \*

**MS. BURKETT: If we were permitted to question this witness, we anticipate that she would indicate that [E.P.] did in fact tell her that she was going to lose her virginity before the – she told her before the snowball that she had planned to lose her virginity with Austin at the snowball. She then spoke to her on Monday after the snowball and told her that, in fact, she did not lose her virginity because the condom had broken. This is directly contradictory to what [E.P.] testified to yesterday and this statement would have been offered to impeach her.**

(Tr. at 509-510).

{¶55} On appeal, Shook contends that he should have been permitted to introduce J.M.'s statement to impeach E.P. as having made prior inconsistent statements. However, Shook overlooks the fact that E.P. never denied that she had told J.M. she was still a virgin. E.P. explicitly testified on cross-examination that she was lying to J.M. when she told her she was still a virgin at "snowball." Thus Shook had no basis to introduce extrinsic evidence of a prior inconsistent

statement as E.P. did not provide inconsistent statements on this matter. Thus we can find no error in the court's denial of Shook's proffered testimony. At the very least, we cannot find that the trial court abused its discretion in excluding this evidence. *See Kemp*, *supra*, at ¶ ¶ 36-41.

{¶56} Moreover, even if there was error here, it clearly was not prejudicial where the jury already had the testimony from E.P. that she had lied to J.M. about being a virgin at the time of the snowball dance. J.M.'s testimony would have merely been cumulative to testimony the jury was already aware of, and we could not say that but-for this piece of evidence the outcome of the trial would have been different. Thus even if there was error here, we cannot find that it was anything but harmless. Accordingly, Shook's third assignment of error is overruled.

{¶57} For the foregoing reasons Shook's assignments of error are overruled and the judgment of the Logan County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ROGERS and PRESTON, J.J., concur.**

**/jlr**