[Cite as *State v. Cervantes*, 2019-Ohio-1373.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 18AP-505 |
| v. | : | (C.P.C. No. 17CR-509) |
| Jose L. Cervantes, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 11, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellee.

**On brief:** *Yavitch & Palmer*, *Co. L.P.A.*, and *Jeffery A. Linn, II*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Jose L. Cervantes, appeals the judgment of the Franklin County Court of Common Pleas convicting appellant of possession of heroin and tampering with evidence. For the following reasons, we affirm the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On January 27, 2017, appellant was indicted on one count of possession of heroin pursuant to R.C. 2925.11, a second-degree felony, and one count of tampering with evidence pursuant to R.C. 2921.12, a third-degree felony. Appellant entered a plea of not guilty, and the matter proceeded to a jury trial held from February 12-14, 2018.

{¶ 3} Plaintiff-appellee, State of Ohio, called Jeffrey Tabor of the Criminal Intelligence Unit of the Columbus Division of Police, which he described a "plainclothes

assignment" that assists other units of the department. (Tr. at 40.) Prior to his 3 years of working in the criminal intelligence unit, he worked in narcotics for 12 years and was on patrol for approximately 10 years.

{¶ 4} According to Tabor, on December 28, 2016, an informant provided information that a woman with a warrant out for her arrest named Ashley Rinehart was located in a certain room in a Columbus hotel. Tabor had information that the original, violent incident underlying Rinehart's warrant also involved two accomplices, a man and a women.

{¶ 5} Tabor, a couple of people from his unit, and patrol officers went to the hotel at about 11:00 a.m. and confirmed with the hotel manager that Rinehart was in the hotel room indicated by the informant. The manager knocked on the hotel room door and announced that it was past time for Rinehart to check out and moved off to the side when Rinehart opened the door.

{¶ 6} Tabor positively identified Rinehart as the person subject to the warrant and entered the hotel room, which had a bathroom to the immediate left, followed by two beds divided by a middle nightstand, and a window at the back of the room. The lights were on. Tabor entered the hotel room in plain clothes, his police identification badge out, and, since Rinehart had been involved in a violent crime where a weapon had been used, his gun drawn. Tabor testified he "yelled, 'police' as [the group was] coming in." (Tr. at 46.) According to Tabor, Rinehart retreated all the way back towards a window, saying "[w]hat did I do? What did I do?"; Tabor observed two people, a male and a female, sitting on the bed closest to the door and a man, who Tabor identified as appellant, sitting on the far bed closest to the window. (Tr. at 43.) At that point, Tabor testified:

> Out of the corner of my eye I see the male sitting in the bed. He automatically bends over like this and reaches. I automatically turned my gun on him, thinking he is trying to get a gun. I order him to stop. He doesn't stop. I order him again, show me his hands. He takes his hands and shoves them in his pants. I order him two more times to show me his hands. He finally brings his hands out and puts them up.
>
> At that time we secure everybody that is in the room, because we are not just looking for one person, we are looking for a total of three people, two females and one male that was also supposed to be in the room.

> But we were only able to positively identify the one person at that time being there for sure. So we handcuff everybody, get them all secure. And then Officer Cramblett walks over, so I tell him he was reaching for something, it might be a gun.
>
> He walks over and he says, "No, it wasn't a gun. It was what you thought it was, a big bag of dope."

(Tr. at 43-44.)

{¶ 7} According to Tabor, he was standing in between the two beds when he saw appellant "reaching over," which automatically drew his attention. (Tr. at 47.) Asked more about appellant's specific movement, Tabor testified:

> When we came in, he was laying in the bed, looked over, saw me, saw us come in. And he leaned across the bed, made a motion like this, grabbed something and reached over and hid it. And on those beds in the hotel, the backboards are right up against the wall, like most of them are in a hotel room. And then you had the box-spring. And on the corner of it where the two meet, where the bed frame meets with the headboard, that is where it was sitting, right there, the heroin was.

(Tr. at 49-50.) Tabor further testified appellant had underwear on and, at one point, stuck his hands in his underwear and was trying to pretend to sleep.

{¶ 8} Tabor testified they ended up arresting appellant, who had $1,000 and two cell phones in his pants and seizing the plastic bag of heroin. Later testing showed 13.979 grams of "tar heroin," which has a "dark black solid color." (Tr. at 60.) According to Tabor, who testified he is familiar with the various types of heroin, the street value of the heroin found in the hotel room was about $100 to $120 per gram and was in a quantity beyond "user amount." (Tr. at 63.) Tabor testified appellant gave police a false name prior to his arrest. Regarding the other two people in the room on the closer bed, Tabor testified they identified them, confirmed they were not the male and female involved in the original incident underlying the warrant, ran checks on them and spoke to them briefly, and ultimately let them gather their property and leave.

{¶ 9} On cross-examination, Tabor testified when appellant initially moved, he thought appellant had a gun. However, Tabor did not see a gun and testified "[h]e had something in his hand when he reached over," then agreed he saw drugs in appellant's hands, which he could "[e]asily" identify. (Tr. at 69, 70.) Cross-examined on this point

further, Tabor testified "[appellant] picked something up off of the bed which was a black substance in a bag," about the size of a golf ball, that resembled heroin but, at the time, he did not know for certain was heroin until it was tested. (Tr. at 74.)

{¶ 10} Regarding the report of the incident Tabor prepared, he agreed with the defense attorney's characterization of his report that said he found appellant lying with his hands hanging over the bed as if he was trying to hide "something" (without specifying appellant was trying to hide drugs), and appellant was "asked to show his hands after two warnings." (Tr. at 78.) On redirect, Tabor testified he did not interview Rinehart about the drugs because he saw appellant "reach over and place it there." (Tr. at 82.)

{¶ 11} Monte Nommay, a detective in the Columbus Division of Police Criminal Intelligence Unit, testified to being the second person to enter the hotel room, behind Tabor. According to Nommay, "[o]nce the door started opening, we could hear the handle go down, we announced 'Columbus police' just for our safety. * * * [W]e don't say it softly." (Tr. at 98.) Once they announced "police," Rinehart backed away, and Nommay stepped to the left side of the room, focusing his attention on the male and female in the first bed. Tabor then yelled "[l]et me see your hands," which caused Nommay to look over to appellant and draw his own weapon. (Tr. at 91.) When Nommay looked toward appellant, appellant was laying on his side with his hand already down beside the bed toward the back head board. Appellant rolled to his back, and "[w]hen he brought his hands up, he kind of shoved them down into the front of his pants": his hand went up but then back down under the covers before bringing his hands up again. (Tr. at 92.) Asked about the pants, Nommay specified that he thought appellant was under the covers and did not believe he was wearing any clothes.

{¶ 12} Todd Cramblett, a patrol officer with the Columbus Division of Police, testified to assisting Tabor and Nommay with the arrest warrant and being the third person to enter the hotel room. He was in a police uniform. According to Cramblett, when the doors opened, Rinehart backed away, the group of officers entered the room, Tabor and Nommay went after Rinehart, and one of the officers started saying something to appellant. Cramblett testified after Tabor detained appellant, Tabor said something to the effect that "he believed [appellant] was putting something at the top of the bed, he was reaching for something or putting something up there." (Tr. at 114.) Cramblett walked to the bed and

saw a "clear bag that had what appeared to be black tar heroin in it shoved between the mattress and the wall." (Tr. at 110.) The bag was visible to Cramblett near the top of the mattress—he did not need to move anything to see it—and appeared to him to be pushed down. Cramblett let the officers know about the bag and stood near it until Tabor walked over to secure the bag.

{¶ 13} Appellee admitted as evidence the inventory from the room, the laboratory report, and evidence items, including the heroin, and rested its case. The police report was not admitted into evidence. Appellant moved for acquittal under Crim.R. 29, which the trial court denied. Appellant then called two witnesses in his defense.

{¶ 14} Ladawn Mercier testified she had known appellant for about three to four years and her fiancé, Donald Housley, was appellant's mechanic. Mercier testified that she, Housley, appellant, and Rinehart, who Mercier said she just met that day, went to the hotel on December 27, 2016. According to Mercier, all of them did heroin, which they got from Rinehart, and Mercier stayed up all night with Rinehart while both men went to sleep. Mercier testified a few minutes before 11:00 a.m. the next morning, she heard a knock at the door and a lady saying "[f]ront desk." (Tr. at 132.) According to Mercier, Rinehart first said "[n]o, wait a minute," because she was smoking heroin at the time, and after a second knock on the door, Rinehart stuffed the heroin in one side of her bra and money in the other side of her bra and went to open the door. (Tr. at 132.) Rinehart opened the door, was "jerked" out of the room, and "plainclothes people came in with guns." (Tr. at 132.) Mercier did not know who the people were until she saw their badges and realized they were cops.

{¶ 15} According to Mercier, at this time appellant was laying down, "dead asleep," with his pit bull on the bed. (Tr. at 140.) Mercier testified she saw appellant wake up with a person standing over him with a gun in his face, telling him to stand up. She never saw appellant hide any drugs or make a movement when the officers entered the room as if he were hiding something. Mercier testified the officers sat appellant up, searched and handcuffed all three of them, and questioned them about whether there was any drugs in the room and whether any of them had warrants. According to Mercier, while they were sitting in the room, the officers looked at her and said " '[y]ou are a meth head'; looked at [Housley] and said, 'You are a heroin addict'; and looked at [appellant] and said, 'And that is your dealer.' " (Tr. at 141.) The officers took all 3 of them outside and put them in a paddy

wagon for about 30 minutes. Finally, an officer released Mercier and Housley and told appellant they were taking him to jail for the drugs they found in the hotel room.

{¶ 16} According to Mercier, the officers never found any drugs in the room while she was in the room, and Rinehart was the only person in possession of heroin: prior to putting it in her bra, she had it in her purse. Mercier testified appellant only smoked what Rinehart gave him, she never saw appellant in possession of the heroin, and no drugs were on the bed with appellant. Mercier further testified she never saw an officer in uniform until they were outside, and the officers never interviewed her about the drugs.

{¶ 17} On cross-examination, Mercier denied offering to testify on appellant's behalf in exchange for heroin and agreed appellant's fiancée gave her a ride to court to testify. Mercier testified that, at the point people with guns were coming into the hotel room, she was not focused on the people with guns but "looked right at [Housley]." (Tr. at 152.)

{¶ 18} Housley testified Rinehart gave all of them heroin on the evening of December 27, 2016, he did some heroin, and he and appellant went to sleep. According to Housley, he saw Rinehart keep the heroin in her bra. In the morning, he heard a knock on the door and someone say "front desk." (Tr. at 166.) Rinehart was doing heroin at the time. Mercier tried to open the door, but Rinehart pushed her arm back. Rinehart then opened the door and was "snatch[ed]" out of the room, while the officers "back[ed Mercier] up" into the room. (Tr. at 167.) According to Housley, people with guns then came in "yelling, 'police,' whatever. I don't think they even said 'police.' " (Tr. at 167.) At this time, appellant was still asleep, according to Housley. Housley and appellant, who then woke up, jumped up and put their hands up. The officers sat all three on the bed and labeled Mercier, Housley, and appellant a meth head, heroin addict, and drug dealer, respectively. The officers then handcuffed them, took them to the paddy wagon, and eventually let Mercier and Housley go while arresting appellant for possession. According to Housley, he never saw appellant try to hide anything and never saw appellant in possession of drugs aside from the amount appellant smoked.

{¶ 19} On cross-examination, Housley testified he had just met Rinehart the day they went to the hotel, and when asked why she would give him heroin, Housley said he guessed "[b]ecause she had a lot of it" and noted "[t]hat is not the first time a heroin addict

with a lot of dope has given me some." (Tr. at 172.) Housley denied coordinating his recollection of events with his fiancée.

{¶ 20} Appellant rested his case and offered one exhibit, a layout of the hotel room, which was admitted into evidence. Appellant renewed his motion for acquittal under Crim.R. 29, which the trial court again denied. In the jury instructions, by agreement of both parties, a paragraph was added to the tampering with evidence charge intended to paraphrase *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, quoting *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 16, regarding the unmistakable crime doctrine. It states:

> Merely establishing that a crime was committed is insufficient to prove that the accused knew at the time the evidence was altered, destroyed, concealed or removed that an official proceeding or investigation into that crime was ongoing or likely to be instituted. The evidence tampered with must have some relevance to the ongoing or likely investigation or proceeding.

(Tr. at 203.)

{¶ 21} The jury found appellant guilty on both counts; the verdict form for the possession count indicated the jury found the amount of heroin involved was equal to or exceeding 10 grams but less than 50 grams. After a sentencing hearing, on May 30, 2018, the trial court filed a judgment entry imposing 5 years of incarceration for the possession of heroin count concurrent to 12 months incarceration on the tampering with evidence count, to be served concurrently with the sentence in another case. The trial court further imposed a 3-year mandatory post-release control and a financial sanction in the amount of $7,500 and found and certified 387 days of jail credit.

{¶ 22} Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 23} Appellant assigns the following as trial court error:

> [1.] THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S CRIM. R. 29 MOTION FOR JUDGMENT OF ACQUITTAL, AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

[2.] THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY PROVISIONS OF THE OHIO CONSTITUTION BECAUSE THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. STANDARD OF REVIEW

{¶ 24} "Because a Crim.R. 29 motion questions the sufficiency of the evidence, we apply the same standard of review on appeal as in a challenge to the sufficiency of the evidence." *State v. Guy*, 10th Dist. No. 17AP-322, 2018-Ohio-4836, ¶ 40, citing *State v. Kearns*, 10th Dist. No. 15AP-244, 2016-Ohio-5941, ¶ 44. "Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict." *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 32, citing *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 25} "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). "Further, 'the testimony of one witness, if believed by the jury, is enough to support a

conviction.' " *Patterson* at ¶ 33, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. *See also State v. Clark*, 10th Dist. No. 15AP-926, 2016-Ohio-5493, ¶ 25.

{¶ 26} "Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence." *State v. McCombs*, 10th Dist. No. 15AP-245, 2015-Ohio-3848, ¶ 3, citing *Thompkins* at 387. "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38.

{¶ 27} "When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Patterson* at ¶ 34, citing *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

{¶ 28} In conducting a manifest weight of the evidence review, we may consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting such review, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "Accordingly, we afford great deference to the jury's determination of witness credibility." *State v. Albert*, 10th Dist. No 14AP-30, 2015-Ohio-249, ¶ 14. "Mere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25, *discretionary appeal not allowed*, 140 Ohio St.3d 1455, 2014-Ohio-4414, citing *State v. G.G.*, 10th Dist. No. 12AP-188, 2012-Ohio-5902, ¶ 7.

## IV. LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 29} Under his first assignment of error, appellant contends the trial court erred in overruling his Crim.R. 29 motion for judgment of acquittal, as appellee failed to offer sufficient evidence to prove each element of the crimes charged. For the following reasons, we disagree with appellant.

{¶ 30} Appellant was convicted of possession of heroin and tampering with evidence. Regarding the possession of heroin charge, R.C. 2925.11(A) states, in pertinent part: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(A) and (C)(6).

{¶ 31} As a preliminary issue, we are unclear what argument appellant is making regarding the sufficiency of the evidence as it relates to the possession conviction. Appellant does not divide the assignment of error into arguments regarding each conviction or present legal authority regarding sufficiency of the evidence of possession. As a result, appellant does not meet his burden of demonstrating error on appeal in regard to the possession conviction. App.R. 16(A)(7); *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); *State v. Smith*, 9th Dist. No. 15AP0001n, 2017-Ohio-359, ¶ 22 (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf).

{¶ 32} Furthermore, the arguments appellant presents that could possibly be linked to the possession conviction concern matters of weight rather than sufficiency. For example, appellant argues appellee offered "inconsistent and unreliable" evidence, particularly through Tabor's testimony regarding what he thought was in appellant's hand. (Appellant's Brief at 8.) Appellant believes this inconsistency deemed the evidence insufficient to prove the charges and diminished Tabor's credibility. Appellant additionally implies he simply had no time to possess the drugs on these facts. This argument is based on believing Mercier's and Housley's version of events, presented in appellant's defense, that appellant was asleep until the officer was above him with a gun, rather than Tabor's recollection.

{¶ 33} Arguments concerning inconsistent evidence and witness credibility are matters relevant to the weight, rather than the sufficiency, of the evidence. *State v. Dennis*, 10th Dist. No. 08AP-369, 2008-Ohio-6125, ¶ 32-44; *State v. Haynes*, 10th Dist. No. 03AP-1134, 2005-Ohio-256, ¶ 24; *State v. Hudson*, 8th Dist. No. 91803, 2009-Ohio-6454, ¶ 44. As such, we will address these considerations under our review of the manifest weight of the evidence in the second assignment of error. *State v. Sieng*, 10th Dist. No. 18AP-39, 2018-Ohio-5103, ¶ 51.

{¶ 34} Moreover, to the extent appellant challenges evidence of possession, the argument lacks merit. Appellee presented evidence that, if believed, shows appellant grabbed something off the bed that resembled heroin and placed it between the mattress and wall, officers found a clear bag with a black substance in that location, and testing showed the substance was heroin. We find this evidence sufficient on the facts and circumstances of this case to show appellant had control of the bag of heroin beyond mere "access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).[1] Therefore, considering all the above, appellant's first assignment of error as it relates to his possession of heroin conviction lacks merit.

{¶ 35} Regarding the conviction for tampering with evidence, R.C. 2921.12(A)(1) states in pertinent part: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: * * * Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." Thus, to support a conviction for tampering with evidence under R.C. 2921.12(A)(1), appellee must establish, beyond a reasonable doubt, that the defendant (1) knew "of an official proceeding or investigation in progress or likely to be instituted," (2) altered, destroyed, concealed, or

---

[1] Pursuant to R.C. 2925.01(K), " '[p]ossess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Ownership of the drugs need not be established for possession. *State v. Hilton*, 9th Dist. No. 21624, 2004-Ohio-1418, ¶ 16. " '[I]n determining whether a defendant knowingly possessed a controlled substance, it is necessary to examine all of the facts and circumstances surrounding the incident.' " *State v. Walker*, 10th Dist. No. 14AP-905, 2016-Ohio-3185, ¶ 72, quoting *State v. Mabry*, 2d Dist. No. 21569, 2007-Ohio-1895, ¶ 20. Circumstantial evidence may be sufficient to support a conviction for possession of a controlled substance. *Guy* at ¶ 44, citing *State v. Hurse*, 10th Dist. No. 14AP-687, 2015-Ohio-2656, ¶ 21.

removed "the potential evidence," and (3) possessed a purpose to impair "the potential evidence's availability or value in such proceeding or investigation." *Straley*, 2014-Ohio-2139 at ¶ 11.

{¶ 36} Under this test, " 'the evidence tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge.' " *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, ¶ 111, quoting *Straley* at ¶ 16. "The likelihood of an investigation is measured at the time of the alleged tampering." *Martin* at ¶ 110. Circumstantial evidence may be sufficient to support a conviction for tampering with evidence. *Id.* at ¶ 112.

{¶ 37} We first reiterate that appellant's argument regarding appellee presenting "inconsistent and unreliable" evidence is a matter properly considered under the second assignment of error in assessing the manifest weight of the evidence. (Appellant's Brief at 8.) *Sieng* at ¶ 51; *Dennis* at ¶ 32-44; *Haynes* at ¶ 24; *Hudson* at ¶ 44. Likewise, appellant's argument that he "did not have the capacity or time to realize the presence of officers (armed men in plain clothing) * * * and attempt to tamper with evidence to conceal that crime" again depends on which version of events is believed and will therefore be addressed under the second assignment of error concerning the manifest weight of the evidence. (Appellant's Brief at 11-12.) *Sieng* at ¶ 51.

{¶ 38} Regarding the "unmistakable crime" doctrine, appellant specifically argues he had "no reason to believe that an investigation was instituted or pending against him" and implies that the conviction was instead based on the "unmistakable crime" doctrine, which Ohio does not recognize in connection with the offense of tampering with evidence, as stated in *Barry*.[2] (Appellant's Brief at 11, 12.)

{¶ 39} In *Barry*, the Supreme Court of Ohio addressed the issue of "whether knowledge that an official proceeding or investigation is pending or likely to be instituted can be imputed to one who commits a crime, regardless of whether that crime is likely to be reported to law enforcement." *Id.*, 2015-Ohio-5449 at ¶ 17. The defendant in *Barry* had concealed heroin in her body cavity several hours prior to being stopped by a state highway patrol officer for erratic driving and a defective muffler. At the traffic stop, the officer

---

[2] We note the Supreme Court in *Martin* at ¶ 108-09, 115-19, considered *Barry* relevant to a sufficiency argument on appeal.

smelled marijuana, which led to a search of the car and questioning of the occupants, one of whom indicated the defendant had heroin concealed in her body. The defendant eventually admitted to having the heroin, and it was later recovered.

{¶ 40} The *Barry* court first noted that in its recent case, *Straley*, it held that the evidence tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge and that the likelihood of an investigation is measured at the time of the act of alleged tampering. As such, the *Straley* court concluded a defendant's conviction for tampering was not supported by sufficient evidence where nothing in the record suggested the officers were conducting or likely to conduct an investigation into trafficking or possession of cocaine at the point in time the defendant discarded a baggie of cocaine.

{¶ 41} Applying *Straley*, the court in *Barry* rejected the proposition that "by committing an 'unmistakable crime' by concealing, transporting, or possessing heroin, [the defendant] at that time had constructive knowledge of an impending investigation into at least one of those crimes." *Id.* at ¶ 23. The court reiterated "Ohio does not recognize the 'unmistakable crime' doctrine in connection with the offense of tampering with evidence" and "merely establishing that the crime committed is an unmistakable crime is insufficient to prove that the accused knew at the time the evidence was altered, destroyed, concealed, or removed that an official proceeding or investigation into that crime was ongoing or likely to be instituted." *Id.* at ¶ 26.

{¶ 42} Applied to the facts of its case, the *Barry* court then found the defendant's conviction for tampering was not supported by sufficient evidence since the defendant concealed the heroin with a purpose to generally avoid detection by law enforcement but without knowledge of an impending or likely investigation. The court noted the only people present when she concealed the heroin were her co-conspirators, nothing in the record showed that she thought it likely that she would be stopped by law enforcement, and she was confronted by police hours after she concealed the heroin.

{¶ 43} We find *Barry* distinguishable based on the instant record. First, as later noted by the Supreme Court in *Martin*, 2017-Ohio-7556 at ¶ 118, "*Barry* does not foreclose the possibility that knowledge of a likely investigation may be inferred when the defendant commits a crime that *is* likely to be reported." (Emphasis sic.) *See also State v. Bradshaw*,

4th Dist. No. 17CA3803, 2018-Ohio-1105 (noting *Barry* involved preemptive measures as opposed to a reaction to a likely investigation of a recent criminal act).

{¶ 44} Here, appellee provided evidence that, if believed, showed officers announced "police" as they entered the hotel room, the two officers who entered first wore police badges and one had his gun drawn, the third officer to enter the room wore a police uniform, and, after the officers entered the room, appellant moved a clear bag with what appeared to be tar heroin from the bed to a place between the mattress and the wall, and tar heroin was actually found in that location. On these facts, we find a jury could properly infer that, at the time he concealed the heroin, appellant knew an official proceeding or investigation was likely to be instituted regarding possible drug use and possession and that appellant concealed or removed the heroin with a purpose to impair the heroin's availability in such proceeding or investigation. *Straley* at ¶ 11; R.C. 2921.12(A)(1). Thus, a rational juror could find all the essential elements of tampering with evidence had been proven beyond a reasonable doubt. *Robinson*, 2009-Ohio-5937, at ¶ 34; *Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus. Therefore, sufficient evidence supported appellant's conviction.

{¶ 45} Accordingly, appellant's first assignment of error is overruled.

## B. Appellant's Second Assignment of Error

{¶ 46} Under his second assignment of error, appellant contends his convictions are against the manifest weight of the evidence "[f]or the reasons already argued in the [first] assignment of error." (Appellant's Brief at 14.) For the following reasons, we disagree with appellant.

{¶ 47} Appellant argues appellee offered "inconsistent and unreliable" evidence and contrasts Tabor's testimony that he could easily identify the drugs as heroin against Tabor's testimony that thought appellant could have had a gun in his hand and Tabor's report, which did not specifically indicate he instantly knew the drugs were on the bed. (Appellant's Brief at 8.) According to appellant, this diminished Tabor's credibility. Appellant additionally argues he "did not have the capacity or time to realize the presence of officers (armed men in plain clothing), worry about consuming/possessing drugs that is a crime, and attempt to tamper with evidence to conceal that crime." (Appellant's Brief at 12.) This argument is based on Mercier's and Housley's version of events in which appellant

was asleep until the officers were in the room and Tabor was standing above him with a gun. Essentially, appellant contends the jury should have believed the version of events presented by Mercier and Housley over Tabor.

{¶ 48} Matters of alleged inconsistencies in testimony and evidence, credibility of witnesses, and weight are issues primarily determined by the trier of fact. *Dennis*, 2008-Ohio-6125 at ¶ 32, citing *Yarbrough*, 2002-Ohio-2126 at ¶ 79; *State v. Thomas*, 70 Ohio St.2d 79, 80 (1982). "The jury thus may take note of the inconsistencies and resolve them accordingly, believing all, part, or none of a witness's testimony." (Internal quotations and citations omitted.) *State v. Glover*, 10th Dist. No. 07AP-832, 2008-Ohio-4255, ¶ 40. " ' "It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness." ' " *State v. Hunt*, 10th Dist. No. 12AP-1037, 2013-Ohio-5326, ¶ 91, quoting *Haynes*, 2005-Ohio-256 at ¶ 24, quoting *State v. Lakes*, 120 Ohio App. 213, 217 (4th Dist.1964). Further, "[a] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Scott*, 10th Dist. No. 10AP-174, 2010-Ohio-5869, ¶ 16.

{¶ 49} First, on this record, we disagree with appellant's characterization of Tabor's testimony as inconsistent and lacking in credibility. Although Tabor's testimony overall was not exceptionally clear, we can discern from the transcript that the material points of Tabor's testimony remained consistent: after Tabor entered the hotel room, appellant's initial movement drew his attention due to the safety threat possibility of a gun; when focused on appellant, Tabor saw appellant grab something, reach, and hide it where the bed frame meets the wall; appellant then hid his hands again; and heroin was found where the bed meets the wall. Tabor's action in focusing his attention on appellant instead of others in the room, which appellant's witnesses also observed, tends to strengthen the credibility of Tabor's contention about appellant's movements. Testimony by Nommay and Cramblett regarding Tabor yelling "[l]et me see your hands," appellant hiding his hands, and finding heroin in the location indicated by Tabor, as well as the amount of money and two cell phones found on appellant, also strengthens Tabor's credibility. (Tr. at 91.)

{¶ 50} Furthermore, to believe Mercier's and Housley's version of events, the jury would have to believe that, instead of being focused on the armed people entering the hotel room, Mercier and Housley were observing appellant at the moment the officers were

entering and near him. Furthermore, Mercier testified to observing appellant being dead asleep until the point Tabor was near him with the gun aimed at him but also testified that when the officers entered she was looking at Housley, not appellant. Housley seemed to admit the officers yelled "police" when they entered the room but quickly backtracked on that statement. (Tr. at 167.) Mercier's and Housley's version of events would also require the jury to believe that Rinehart, a person they just met that day and an addict herself, gave three other people her heroin for no apparent reason. These points diminished the credibility of Mercier's and Housley's testimony.

{¶ 51} Considering all the above, this is not the exceptional case in which the evidence weighs heavily against conviction. *Thompkins*, 78 Ohio St.3d 380, at 387. The jury heard testimony from the witnesses and were able to personally observe the witnesses' demeanor, gestures, and voice inflections and used these observations in weighing the credibility of all the witnesses. Having reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of witnesses, we find the jury, in resolving conflicts in the evidence, did not clearly lose its way and create such a manifest miscarriage of justice that appellant's convictions must be reversed and a new trial ordered. *Patterson*, 2016-Ohio-7130, at ¶ 34. Therefore, appellant's convictions are not against the manifest weight of the evidence.

{¶ 52} Accordingly, we overrule appellant's second assignment of error.

## V. CONCLUSION

{¶ 53} Having overruled appellant's two assignments of error, we affirm the decision of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____