[Cite as *State v. Williams*, 2021-Ohio-1639.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

      Plaintiff-Appellee,          :

                                    No. 19AP-516

v.                                                :     (M.C. No. 18CRB-19476)

Chavay S. Williams,                       :         (REGULAR CALENDAR)

      Defendant-Appellant.         :

---

D E C I S I O N

Rendered on May 11, 2021

---

**On brief:** *Zach Klein*, City Attorney, and *Stephen J. Steinberg*, for appellee.

**On brief:** *Yeura R. Venters*, Public Defender, and *Ian J. Jones*, for appellant.

---

APPEAL from the Franklin County Municipal Court

SADLER, J.

{¶ 1} Defendant-appellant, Chavay S. Williams, appeals from a judgment of the Franklin County Municipal Court convicting appellant of endangering children, in violation of R.C. 2919.22(A). For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In 2018, appellant worked for Playtime Daycare ("Playtime") in the position of lead teacher. (Tr. Vol. I at 117.) According to appellant, a lead teacher is typically a better credentialed member of the staff and the person in charge of the classroom. Appellant testified she obtained certification as a child development associate, which would have permitted her to become a director or administrator of a daycare. On June 14, 2018, the

date of the incident, appellant was acting as the lead pre-K teacher for her class of 25 students.

{¶ 3} On that day, appellant was one of two teachers supervising children on the outdoor playground. A college student by the name of Julia Jackson McIver was the other daycare teacher on the playground. According to appellant, after cleaning up in her classroom with the help of four or five of her students and attending to some business for the administrator, she went out to the playground where McIver was supervising sixteen or seventeen children from several different classes. Approximately ten minutes after appellant arrived at the playground, she used the camera on her cellular phone to film a one-minute and six-second video of multiple young children fighting and engaging in other potentially harmful behaviors on the playground.

{¶ 4} The video subsequently appeared on an internet platform known as "Snapchat." (Tr. Vol. I at 188.) The video was admitted into evidence during appellant's bench trial without objection. (Tr. Vol. I at 161.) Our review of the footage reveals a startling level of chaos. The video shows a large group of children between the ages of three and five, simultaneously fighting with each other on the playground, knocking one another to the ground, and striking one another with shoes. At one point in the video, a young girl can be seen hitting a smaller boy with a coat while one boy punches and kicks another boy. There are also children standing on a bench and pulling themselves up on a six-foot fence surrounding the playground. Another child is shown grabbing the leg of another in an attempt to pull the child down from the fence. Throughout the one-minute video, children can be heard screaming and crying.

{¶ 5} Appellant added captions and images, known as emojis, to the Snapchat video that was posted from her phone. The caption "Street Fighters Come to Life" appears on the screen along with a zany face emoji, a grinning squinty face emoji, and a rolling on the floor laughing emoji. (State's Ex. A.) The word "Knock Out" is written below the emojis. (State's Ex. A.) An image of a woman punching her hand appears above the emojis along with a pair of boxing gloves throwing punches.

{¶ 6} According to the testimony at trial, Snapchat videos appear on the site for only one day before they are automatically deleted. On this occasion, however, Breanna Madden, the mother of two children attending Playtime, viewed the Snapchat video after it

was forwarded to her by someone who had preserved the footage with her own cellular phone. After viewing the video, Madden was sufficiently troubled by the content to forward the footage to a contact at Franklin County Children's Services ("FCCS"). FCCS then forwarded the video to the Columbus Police Department ("CPD").

{¶ 7} CPD Detective David Copeland testified he received a referral from FCCS regarding the video and began an investigation. He testified the video showed children pushing each other, and he could hear another child screaming. After initially viewing the footage, Copeland began his investigation of the incident by interviewing Madden and ordering a forensic examination of the video. Madden subsequently explained to Copeland how she obtained the video, and she played it for him on her cellular phone.

{¶ 8} Copeland interviewed McIver over the telephone and conducted an in-person interview with appellant. Copeland testified appellant admitted taking the video and adding the emojis, but she maintained she did so only to show parents how their children behaved when they were at Playtime. Appellant told Copeland she put the video on Snapchat, but she removed it one hour later and "nobody viewed it." (Tr. Vol. I at 24.)

{¶ 9} At trial, McIver testified she was on the playground with appellant on June 14, 2018. McIver was asked to describe the events she saw on the video as it was played for her during her direct examination. McIver was able to authenticate the video as a true and accurate depiction of the playground on June 14, 2018. She acknowledged that children shoving and punching one another are shown in the video. When asked why she did not intervene with the children during appellant's filming, McIver testified she followed appellant's lead with respect to supervision because appellant was a certified childcare specialist and far more experienced. She also testified she was "distracted" by other children while appellant was filming. (Tr. Vol. I at 101.) During McIver's direct examination, the prosecutor asked her to identify exhibit H of plaintiff-appellee, State of Ohio, which purports to be the attendance sheet showing the arrival and departure times for all students who attended Playtime on June 14, 2018.

{¶ 10} Rochelle Rensch was the daycare director at Playtime. According to Rensch, as a lead teacher, appellant was expected to direct other Playtime employees, organize activities, and take responsibility for the care of the children. (Tr. Vol. I at 118-20.) Rensch testified when she watched the video appellant made on June 14, 2018, she saw "something

that I truly didn't believe happened until I saw the videos myself." (Tr. Vol. I at 131.) She further stated that "we had to terminate [appellant's] employment, because that's not a situation that could be rectified by discipline or suspension or retraining." (Tr. Vol. I at 131.) In Rensch's opinion, the video shows appellant "failed to maintain safety for the children." (Tr. Vol. I at 131.)

{¶ 11} On September 19, 2018, Copeland filed a criminal complaint against appellant charging her with 21 counts of child endangering, in violation of R.C. 2919.22(A), a misdemeanor of the first degree. Appellant waived her right to a jury trial in favor of a bench trial. At the close of the evidence, the trial court announced its decision on the record. The trial court found appellant guilty of 14 of the 21 counts in the complaint. A verbatim "Entry" memorializing the trial court's decision was filed on June 27, 2019. On August 5, 2019, the trial court convicted appellant of 14 counts of child endangering and sentenced her to 180 days in jail and a $200 fine. The trial court suspended all but 9 days of the jail sentence and placed appellant on 1 year of community control.

{¶ 12} Appellant timely appealed to this court from the August 5, 2019 judgment.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Appellant assigns the following as trial court error:

> [1.] Appellant's convictions for Endangering Children were against the manifest weight of the evidence.
>
> [2.] The evidence was legally insufficient to support the convictions for Endangering Children.

## III. LEGAL ANALYSIS

### A. Appellant's Second Assignment of Error

{¶ 14} To facilitate an orderly discussion of the assignments of error, we will begin with appellant's second assignment of error. In appellant's second assignment of error, appellant contends that appellee presented insufficient evidence to support appellant's guilt of the offense of endangering children, beyond a reasonable doubt. We disagree.

{¶ 15} "Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict." *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Whether the evidence is legally sufficient to support a verdict is a question of law, not fact." *State v. Cervantes*, 10th Dist. No. 18AP-505, 2019-Ohio-1373, ¶ 24, citing *Kurtz* at ¶ 15, citing

*Thompkins* at 386. "In determining whether the evidence is legally sufficient to support a conviction, ' "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." ' " *Cervantes* at ¶ 24, quoting *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 16} "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80. "The court essentially assumes the state's witnesses testified truthfully and determines whether that testimony satisfies each element of the crime." *State v. Davis*, 10th Dist. No. 18AP-921, 2019-Ohio-4692, ¶ 38, citing *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. "Further, 'the testimony of one witness, if believed by [the trier of fact], is enough to support a conviction.' " *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 33, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 17} R.C. 2919.22(A) defines the offense of endangering children, in relevant part, as follows:

> No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

{¶ 18} Pursuant to R.C. 2901.01(A)(8), " '[s]ubstantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." The culpable mental state for the crime of endangering children is recklessness. *State v. McGee*, 79 Ohio St.3d 193, 195 (1997). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C). "When recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element." R.C. 2901.22(E).

{¶ 19} In appellant's brief, appellant makes the following statement: "The key piece of evidence in this case was a purported video of children playing rough on a playground at Playtime daycare. That video was never admitted into evidence." (Appellant's Brief at 1.) Though we agree the video in question was a "key piece of evidence in this case," it is clear to this court that the trial court admitted the video into evidence as state's exhibit A. (Tr. Vol. I at 161.)[1] We find the video and the witnesses' testimonies provided the trial court with sufficient evidence to sustain a finding of guilt, beyond a reasonable doubt.

{¶ 20} The trial court issued a decision on the record after reviewing the trial transcript and the exhibits admitted into evidence, including the videotape. The relevant portion of the trial court's decision is as follows:

> The defendant did create a substantial risk of the safety and harm of the children involved by not providing proper supervision and care for the children and, instead, allowed this type of behavior to continue.
>
> *After watching the video several times, it's clear to me that these children are not playing; they are fighting and out of control.* Out of the 21 children that were present on the playground at the time, I don't think I seen one child in that video that was having a good time or a child who was not crying hysterically, not running around hitting one another with either shoes, fists, or a jacket, not climbing on the fence – That child appeared to be scared. *I watched the video multiple times, and that's what I saw.*
>
> * * *
>
> [T]he defendant did not exercise her duty to stop * * * the children's unsafe behavior. * * * She condoned it and affirmed it, allowing three-, four-, and five-year-old children to believe that their behavior was acceptable.
>
> * * *
>
> Further, the defendant violated her duty of care, protection, and support by not intervening, in leaving the children in a chaotic environment.

(Emphasis added.) (Tr. Vol. II at 321-23.)

---

[1] The transcript "Index" does not indicate admission of exhibit A, but the text evidences admission of the exhibit.

{¶ 21} Appellant argues that the evidence presented by appellee, if believed, does not support a finding, beyond a reasonable doubt, that appellant created a substantial risk to the safety of the children by violating a duty of care or protection. More particularly, appellant argues that even though the video reveals that the children may have had less than an ideal level of supervision, the video does not reveal a heedless indifference by appellant of a substantial risk of harm. We disagree.

{¶ 22} Our review of the testimony of McIver and Copeland, if believed, and the video made by appellant provided the trial court with sufficient evidence to support appellant's convictions of child endangering, beyond a reasonable doubt. The witnesses testified, with the aid of the video, that on June 14, 2018, children on the Playtime playground were punching and kicking one another, shoving one another to the ground, climbing on and hanging from a six-foot fence, climbing over a fallen child, and striking one another with their coats and shoes. The video corroborates the witnesses' testimonies. If anything, the witnesses' testimonies about what is shown in the one-minute and six-second video understates both the degree of risk and the extent of danger to the children.

{¶ 23} The video also reveals appellant acted recklessly, by doing nothing to stop or mitigate the danger to the children. As the person recording the video, appellant cannot credibly maintain she was without knowledge of the obvious risk to the children on the playground. Appellant's claim that any dangerous conduct occurred too quickly for appellant to have acted is also rebutted by the video, as much of the conduct in question continued throughout the entire video. There is no question that misdemeanor endangering children "may be committed by an omission resulting in a substantial risk of injury to a child." *State v. McLeod*, 165 Ohio App.3d 434, 2006-Ohio-579, ¶ 12 (2d Dist.), citing *State v. Elliott*, 104 Ohio App.3d 812, 817 (10th Dist.1995). There is also no dispute that culpability for child endangering does not require actual harm to the child. *State v. Vanest*, 9th Dist. No. 28339, 2017-Ohio-5561, ¶ 10. The evidence in this case permits a finding appellant recklessly violated a duty of care she owed to the children on the playground by failing to intervene and, thereby, creating a substantial risk of harm to those children.

{¶ 24} To the extent that appellant argues it was McIver, not appellant, who owed the duty of care and protection to the children on the playground, the evidence supports a

finding that appellant was the lead teacher on the day in question and that she was the one person on the playground who was certified as a child development associate. McIver testified she did not report what she saw on the playground while appellant was shooting the video, because appellant "has been there for years; so if she is letting it happen, I didn't think it was a big deal." (Tr. Vol. I at 85.) Moreover, a finding that McIver may have also breached a duty of care she owed to the children does not relieve appellant of her duty of care and protection.

{¶ 25} All that is required to sustain a conviction of misdemeanor child endangering is proof that the accused created a substantial risk to the safety of a child; a substantial risk of serious physical harm is not required. *State v. Cochran*, 10th Dist. No. 11AP-408, 2012-Ohio-5899, ¶ 33; *State v. Torr*, 10th Dist. No. 00AP-1418 (Jan. 15, 2002). *See also* R.C. 2919.22(E)(1)(C) (felony child endangering requires proof the accused created a substantial risk of serious physical harm in order to prove the felony offenses of serious physical harm). The testimony of appellee's witnesses and the video support a finding, beyond a reasonable doubt, that appellant created a substantial risk to the safety of the children at Playtime by violating a duty of care and protection.

{¶ 26} For the foregoing reasons, we hold the trial court's verdict is supported by sufficient evidence in the record. Accordingly, we overrule appellant's second assignment of error.

## B. Appellant's First Assignment of Error

{¶ 27} In appellant's first assignment of error, appellant contends the manifest weight of the evidence does not support the finding of guilt. We disagree.

{¶ 28} "Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence." *State v. McCombs*, 10th Dist. No. 15AP-245, 2015-Ohio-3848, ¶ 3, citing *Thompkins*, 78 Ohio St.3d at 387. "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38.

{¶ 29} "When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record,

weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Patterson*, 2016-Ohio-7130, at ¶ 34, citing *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most ' "exceptional case in which the evidence weighs heavily against the conviction." ' " *Cervantes*, 2019-Ohio-1373, at ¶ 27, quoting *Thompkins* at 387, quoting *Martin* at 175. "[A] conviction is not against the manifest weight of the evidence merely because the trier of fact believed the state's version of events over the defendant's version." *State v. Morris*, 10th Dist. No. 18AP-208, 2018-Ohio-5252, ¶ 51, citing *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 43, citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19.

{¶ 30} Appellant claims the trial court lost its way and created a manifest injustice by convicting her of child endangering in light of her own trial testimony. We disagree.

{¶ 31} Appellant testified when she arrived on the playground, she saw the children crying and throwing shoes at one another while McIver did nothing. Rather than immediately intervening, appellant opted to record the children fighting. During appellant's direct examination, she explained her decision as follows: "I just recorded the video. I recorded the video for the parents to see how the children were playing and also so the administrator could see how the children were playing and also there's still a whole teacher outside with them." (Tr. Vol. I at 217.)

{¶ 32} Appellant stated the children seen on the video throwing and striking one another with shoes and coats were just "playing." (Tr. Vol. I at 196.) She did acknowledge, however, that "they're not supposed to be hitting each other with shoes." (Tr. Vol. I at 208.) Appellant characterized the footage of children standing on a bench and then climbing and hanging from a six-foot fence as a "normal occurrence." (Tr. Vol. I at 198.) Appellant acknowledged the video shows children kicking and punching one another, but she characterized the behaviors as "play fighting." (Tr. Vol. I at 202.) She did admit, on cross-examination, that children can still hurt one another when they are play fighting. Appellant told the court that she went back inside the building immediately after recording the video, leaving McIver with the children on the playground.

{¶ 33} The trial court issued a decision on the record after reviewing the trial transcript and the exhibits admitted into evidence, including the videotape. The trial court's ruling provides, in relevant part, as follows:

> The defendant did provide testimony that the children who climbed the fence only hung on the edge just playfully; and, intentionally, they would fall from the fence. To me, that argument is unreasonable and absurd because it's irrelevant that the children may or may not have the strength to climb over the fence. It's a six-foot fence, which is not safe nor intended for children to scale or climb. There's a likelihood that the child could easily fall, suffer serious physical injuries such as a broken leg or an ankle. The fact that they never did that before does change that risk.
>
> * * *
>
> I don't know of a single adult in this world who would believe hitting another person with a shoe is okay. Even though it may not cause a ridiculous amount of injury, society knows that something like that is not okay and cannot be deemed playful.

(Tr. Vol. II at 322-23.)

{¶ 34} The most probative and persuasive evidence of appellant's guilt in this case is the video footage she recorded on June 14, 2018. The video appellant recorded on June 14, 2018 permitted the trier of fact to view the relevant events as they happened and independently evaluate the magnitude of risk created by appellant's failure to act. The trial court's decision reveals the trial court strongly disagreed with appellant's characterization of the behavior of the children as shown in the video. After viewing the video a number of times, the trial court found the behaviors revealed in the video "cannot be deemed playful." (Tr. Vol. II at 323.) The trial court also found appellant's estimation of the risk of harm to the children on June 14, 2018 was "unreasonable and absurd." (Tr. Vol. II at 322.) The trial court concluded appellant "violated her duty of care, protection, and support by not intervening, in leaving the children in a chaotic environment." (Tr. Vol. II at 323.)

{¶ 35} A conviction is not against the manifest weight of the evidence simply because the trier of fact believed the state's version of events over the defendant's version. *Morris*, 2018-Ohio-5252, at ¶ 51; *Lindsey*, 2015-Ohio-2169, at ¶ 43; *Gale*, 2006-Ohio-1523, at ¶ 19. Here, the trier of fact chose to believe appellee's characterization of the events of June 14, 2018 and disbelieve appellant's. Having viewed the video ourselves in ruling on this appeal,

we are convinced the trial court made no error in weighing the evidence and in finding appellant guilty of endangering children. This is not one of the exceptional cases in which the evidence weighs heavily against the conviction. Accordingly, we hold appellant's convictions are not against the manifest weight of the evidence.

{¶ 36} For the foregoing reasons, appellant's first assignment of error is overruled.

## IV. CONCLUSION

{¶ 37} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

DORRIAN, P.J., and BEATTY BLUNT, J., concur.

_____